IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: SARAH J. MORRIS,

Debtor.

SARAH J. MORRIS,

Appellant,

v.

ZABU HOLDING COMPANY, INC., et al.,

Appellees.

Civil Action Number 3:07CV333
Bankr. No. 04-38321

## MEMORANDUM OPINION

This is an appeal from a bankruptcy proceeding pursuant to 28 U.S.C. § 158(a)(1). The case concerns the final order of a bankruptcy judge retroactively annulling the co-debtor stay imposed by 11 U.S.C. § 1301. The final order was entered on March 16, 2007. The bankruptcy court denied the appellant's motion for reconsideration of the order on May 1, 2007. Appellant filed a timely notice of appeal on May 11, 2007. For the reasons stated below, the Court shall AFFIRM the bankruptcy court's final order retroactively annulling the co-debtor stay.

## I. BACKGROUND

The debtor-appellant Sarah J. Morris ("Debtor") filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code ("Code") on September 2, 2004, which the court confirmed on November 9, 2004. At the time of filing and throughout the case, Debtor has been married to Robert E. Morris, who is not a debtor in a bankruptcy case. Debtor and her husband

owned as tenants by the entirety a residence located at 10397 Morning Dew Lane, Mechanicsville, Hanover County, Virginia. The residence was subject to two deeds of trust. UMLIC VA LLC ("UMLIC") held the second deed of trust. Mr. Morris signed the second deed of trust instrument securing the UMLIC note, but he was not an obligor on the note.

On October 11, 2005, UMLIC filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) with respect to its second deed of trust on the Morris residence. UMLIC filed the motion as to Debtor only and did not mention Mr. Morris. The motion alleged that the unpaid principal balance on the deed of trust was $38,669.92, that the total payoff was $55,743.93, and that the loan was six months delinquent post-petition. UMLIC filed an amended motion for relief from the stay on November 23, 2005, stating additional information describing the subject real property. Debtor did not file an answer contesting UMLIC's motion and amended motion for relief from stay. Thus, after a hearing on the motion on November 9, 2005, the bankruptcy court entered an order granting relief from § 362(a)'s automatic stay on November 30, 2005.

UMLIC, through its trustee, conducted a foreclosure sale of the Morris residence on June 20, 2006. A subsidiary of UMLIC made the high bid for the property at the foreclosure sale and subsequently transferred its bid to Zabu Holding Company, LLC ("Zabu"). The property was deeded to Zabu by trustee's deed[1] dated July 3, 2006, and recorded July 14, 2006. Zabu conveyed the property to Brad Jester, Zabu's owner. Jester obtained a loan from SunTrust Mortgage, Inc. ("SunTrust") in the amount of $328,500, and executed a first deed of trust, recorded on September 11, 2006, on the property to secure the loan by SunTrust.

---

[1]The trustee's deed also failed to disclose that one of the owners, Sarah Morris, had been a debtor in bankruptcy at the time of foreclosure.

In early August 2006, Debtor's counsel informed UMLIC's counsel for the first time that UMLIC failed to obtain relief from the co-debtor stay as to Mr. Morris. On November 2, 2006, Debtor filed a motion to set aside foreclosure and reimpose automatic stay.[2] The motion alleged, in summary, that the foreclosure sale UMLIC conducted on Debtor's property violated the co-debtor stay under 11 U.S.C. § 1301 and, therefore, should be void. The motion also charged that Zabu was an entity related to UMLIC.

UMLIC responded on November 10, 2006 to Debtor's motion to set aside foreclosure by filing a motion asking the court to extend the relief from automatic stay to Mr. Morris and deny Debtor's motion to set aside foreclosure. UMLIC alleged that Mr. Morris was not a signatory to the deed of trust note and was only a co-signor on the deed of trust. Further, UMLIC explained that it did not name Mr. Morris in the motion for relief from stay because it mistakenly believed that he was deceased. UMLIC also asserted that Zabu was an unrelated business entity.[3] Zabu also filed a response to Debtor's motion, alleging that it was a good faith purchaser of the real property, that it was unaware of UMLIC's "technical" violation of the co-debtor stay and that the irreparable harm and the extreme delay by Debtor in objecting to the foreclosure justified the court annulling the stay as to Mr. Morris.

The bankruptcy court held a hearing on Debtor's and UMLIC's motions and Zabu's response on November 15, 2006. In an order entered on December 21, 2006, the court granted the Debtor's

---

[2]Notwithstanding the foreclosure sale and subsequent transfers, Debtor and her husband remained in possession of the property until after Debtor filed the instant appeal on May 11, 2007.

[3]The bankruptcy court eventually determined that UMLIC and Zabu were unrelated business entities.

motion to set aside the foreclosure sale of June 20, 2006. However, the court also granted immediate relief from the co-debtor stay to UMLIC.

On January 2, 2007, Zabu filed a motion to reconsider the court's order of December 21, 2006, requesting the court to annul or grant retroactive relief from the co-debtor stay, effectively reinstating the foreclosure sale. SunTrust, which was not previously noticed of Debtor's motion and the ensuing hearing, moved the court for authority to intervene in the controversy and join in Zabu's motion to reconsider. The bankruptcy court held an initial hearing on Zabu's motion to reconsider and SunTrust's motion to intervene on January 31, 2007. Following the hearing, the bankruptcy court requested briefs from the parties and continued the matter to March 14, 2007. Upon receipt and review of the parties' briefs, the court requested, by letter dated March 7, 2007, that the parties provide evidence at the upcoming hearing on when UMLIC and Zabu had notice of the violation of the co-debtor stay.

The bankruptcy court found that while Debtor made UMLIC aware of its failure to obtain co-debtor relief, there was nothing in the record to suggest that Debtor or her counsel made Zabu aware of UMLIC's violation even though Debtor and her counsel were in contact with Zabu in early July 2006 just after the foreclosure sale on June 20.[4] The bankruptcy court also concluded that UMLIC's failure to obtain co-debtor relief was of its own doing. The bankruptcy court based its conclusion on the correspondence sent by the Debtor to UMLIC and its foreclosure trustee advising it that Mr.

---

[4]In its Opinion of March 16, 2007, the bankruptcy court noted that there was no evidence in the record that Zabu was aware of the co-debtor problem. Debtor filed a Motion for Reconsideration of the March 16 Opinion on the grounds that it had new evidence showing that Zabu was aware of the co-debtor issue as of August 1, 2006. Finding the difference between Zabu receiving notice on August 1, 2006 as opposed to November 2, 2006 immaterial, the bankruptcy court denied Debtor's Motion.

Morris was not deceased. The bankruptcy court also noted that although the foreclosure trustee eventually understood there was a co-owner for the property, he also apparently failed to make the connection between joint ownership and the fact that UMLIC had not obtained relief from the co-debtor stay. As a result, the court determined that while UMLIC was or should have been aware that it failed to obtain co-debtor relief, Suntrust did not receive notice of the issue until November 2, 2006 when the Debtor filed her motion to vacate foreclosure.

The bankruptcy court and the parties agreed that this dispute essentially required the court to balance the equities between the Morrises and those claiming under the foreclosure deed (Zabu and Suntrust). While the Morrises stood to lose their residence,[5] SunTrust, an innocent third party, made a large deed of trust against the property to Zabu. Giving substantial weight to SunTrust's lack of knowledge and Debtor's four-month delay in filing her motion to vacate the June 20 foreclosure, the bankruptcy court concluded that the equities plainly favored annulment of the co-debtor stay. Thus, the bankruptcy court vacated its order of December 21, 2006 and retroactively granted relief from the co-debtor stay to UMLIC so as to validate the foreclosure sale. Debtor appeals.

## II. STANDARD OF REVIEW

The applicable standard of review of the bankruptcy court's findings of fact is whether such findings are clearly erroneous. Green v. Staples (In re Green), 934 F.2d 568, 570 (4th Cir. 1991); Bankruptcy Rule 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). "Due regard

---

[5]Debtor notes that the property is worth approximately $435,000 and only $275,000 was owed at the time of the foreclosure.

shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 250 (4th Cir. 1994) (quoting Bankruptcy Rule 8013) (internal quotation marks omitted). Conclusions of law and questions of statutory interpretation are reviewed *de novo*. Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 483 (4th Cir. 1994). Mixed questions of law and fact are "presumptively subject to de novo review." Sherman v. Novak (In re Reilly), 245 B.R. 768, 772 (2d Cir. 2000).

Finally, decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. See Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992) (holding that a decision to lift the automatic stay under § 362 is reviewed for abuse of discretion because the Code does not define what constitutes "cause" and, therefore, courts must determine when discretionary relief is appropriate on a case-by-case basis); Bunch v. Hoffinger Indus. (In re Hoffinger Indus.), 329 F.3d 948, 954 (8th Cir. 2003) (concluding that the bankruptcy court did not abuse its discretion in retroactively annulling the automatic stay); In re Allen, 300 B.R. 127, 129 (Bankr. D.C. 2003) (determining that the standard of review on the appeal of an order annulling the automatic stay under § 362 or the co-debtor stay under § 1301 is "whether the bankruptcy court abused its discretion").

## III. DISCUSSION

The primary issue presented in this case is whether the bankruptcy court abused its discretion when it determined that a balancing of the equities favored retroactive annulment of the co-debtor stay. As a threshold matter, the Court must first examine whether a court may retroactively annul the co-debtor stay based on a balancing of equities.

**A.**

The co-debtor stay is governed by 11 U.S.C. § 1301(a) and comes into effect automatically when a Chapter 13 petition is filed. Section 1301(a) provides:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

§ 1301(a). The purpose of § 1301 is "to simultaneously preserve the substantive rights of creditors and to preserve the fresh start of the debtors by preventing indirect collection practices." King v. Wells Fargo Bank (In re King), 362 B.R. 226, 230 (Bankr. D. Md. 2007). Section 1301 applies only to "consumer debt," which the Code defines as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). "A debt securing a debtor's principal residence qualifies as a consumer debt." In re King, 362 B.R. at 230 (citing Matter of Booth, 858 F.2d 1051, 1054-55 (5th Cir. 1988)).

Section 1301(c) authorizes a court to grant relief from the co-debtor stay if it determines that "such creditor's interest would be irreparably harmed by continuation of such stay." § 1301(c)(3). A creditor who acts to collect on its debt without obtaining relief from the stay violates the co-debtor stay. § 1301(a). Acts in violation of the co-debtor stay, like acts in violation of the automatic stay under § 362, are generally held void. Harris v. Margaretten & Co., Inc., (In re Harris), 203 B.R. 46, 50 (Bankr. E.D. Va. 1994), aff'd,100 F.3d 950 (table), 1996 WL 659434 (4th Cir. 1996). However, under limited circumstances, a court may annul a stay retroactively despite a creditor's violation of

the stay.[6] In re King, 362 B.R. at 234. The annulment "has the effect of validating acts in violation of the stay." In re Harris, 203 B.R. at 50.

Similar to the automatic stay under § 362, some courts have noted that annulment of the co-debtor stay is appropriate only in extreme circumstances,[7] while others have stated that "annulment may be allowed in a unique situation to balance the equities between the parties." In re Harris, 203 B.R. at 50. Addressing whether retroactive annulment of the automatic stay under § 362 required a balancing of equities or exceptional circumstances, a more stringent standard, the Third Circuit recently concluded that balancing the equities is the appropriate test.[8] In re Myers, 491 F.3d 120, 129

---

[6]Although § 1301(c) allows a court to grant relief from the co-debtor stay, it does not specify the type of relief a court may grant. Conversely, § 362(d), governing the automatic stay, specifically states that a court may grant a creditor relief by "terminating, annulling, modifying, or conditioning" the automatic stay. While § 1301 and § 362 are independent provisions, courts have generally allowed relief from the co-debtor stay on the same basis as that under § 362(d), including annulment. See, e.g., In re Harris, 203 B.R. at 50 (explaining that although § 1301(c) does not contain the specific authority of § 362(d), "there is enough flexibility in § 1301(c) for a court to grant relief appropriate to the circumstances presented, including annulment").

[7]"Annulment of the co-debtor stay is appropriate only in exceptional and limited circumstances." In re King, 362 B.R. at 234 (declining to annul the co-debtor stay in order to retroactively validate a mortgage foreclosure sale conducted by the mortgage lender because the debtor's filing deficiencies, which were in part attributable to her counsel, did not rise to the level of abuse of the bankruptcy system); In re Allen, 300 B.R. at 122 (holding that annulling the co-debtor stay was warranted where the creditor was unaware that the bankruptcy petition had been filed, and the Debtor had abused the bankruptcy system by conveying the real property to himself and his mother and filing a Chapter 13 on his mother's behalf in an attempt to stop the foreclosure sale).

[8]Although the co-debtor stay and the debtor stay arise from separate provisions under the Code, the Court finds the case law governing the automatic stay under § 362 instructive as §1301 was enacted, not to protect co-debtors, but to prevent creditors from circumventing the § 362 automatic stay by putting indirect pressure on the debtor through her co-debtors. See In re Motes, 166 B.R. 147, 149 (Bankr. D. Mo. 1994) ("The avowed purpose of § 1301's stay of actions against the codebtor is to 'protect a chapter 13 debtor from indirect pressure from a creditor exerted through his friends or relatives, to favor or prefer that creditor.'") (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 121 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6082).

(3d Cir. 2007) (noting that "[e]ven those cases that have subscribed to a narrow conception of the power to retroactively annul the stay have affirmed that balancing the equities is the appropriate test"); see also Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997) (explaining that because "cause" has no clear definition and is determined on a case-by-case analysis, a balancing of the equities is appropriate to determine whether retroactive annulment of the automatic stay is justified).

Given that the parties agreed with the bankruptcy court that this case required a balancing of equities and that In re Harris[9] and the weight of the case law under § 362 support the use of the balancing of the equities test, the Court concludes that the bankruptcy court correctly found that it must balance the equities in determining whether to retroactively annul § 1301's co-debtor stay.

**B.**

Next the Court addresses whether the bankruptcy court abused its discretion in determining that the equities favored retroactive annulment of the co-debtor stay. In reaching its conclusion, the bankruptcy court first noted that the purpose of the co-debtor stay is to protect debtors from pressures that creditors might exert on co-debtors who were friends, relatives, and fellow employees of the chapter 13 debtor. In re Morris, 365 B.R. 613, 619 (Bankr. E.D. Va. 2007). Given the purpose of the co-debtor stay, the bankruptcy court reasoned that

> [A]s a practical matter, once a creditor is granted relief from the automatic stay of § 362(a) as to the debtor, the purpose of the codebtor stay no longer exists as to that creditor, and relief from the codebtor stay, if requested is invariably granted. Here,

---

[9]While In re Harris does not directly address the issue of which test is appropriate, it notes that annulment of the co-debtor stay "is appropriate in only very limited circumstances; for example, annulment may be allowed in a unique situation to balance the equities between the parties." 203 B.R. at 50. In re Harris was subsequently affirmed by the Fourth Circuit. 100 F.3d 950 (table), 1996 WL 659434 (4th Cir. 1996).

> that result would have been even more obvious due to the fact that the debtor did not oppose relief from the stay.

Id. Thus, because the bankruptcy court would have granted relief from the co-debtor stay, had such relief been requested, and given that Zabu and SunTrust had no notice of UMLIC's failure to obtain co-debtor relief, the bankruptcy court determined that the equities favored annulment of the co-debtor stay so as to validate the foreclosure sale. Id. at 620.

Debtor argues that the bankruptcy court lays the blame for the delay in raising the co-debtor issue with the court squarely on the Debtor, disregarding the fact that the delay was caused by the negotiations between the Debtor and Zabu and that Zabu was made aware of the co-debtor issue shortly after its purchase of the property and at least a month before it borrowed funds from SunTrust.[10] Debtor also points out that the bankruptcy court's ruling encourages a foreclosure purchaser to quickly bring in a third-party lender to protect its position in case a stay violation has occurred that would result in the foreclosure sale being voided.

While Debtor's arguments are compelling, the Court finds that the bankruptcy court did not abuse its discretion by retroactively annulling the co-debtor stay even if, assuming *arguendo*, Zabu was aware of the co-debtor violation prior to borrowing funds from SunTrust. As noted by the bankruptcy court, Zabu receiving notice on August 1, 2006, after the foreclosure sale, as opposed to November 2, 2006 still would not negate the fact that SunTrust is an innocent third party that

---

[10]In her Motion for Reconsideration, the Debtor claimed she had new evidence showing that Zabu was aware of the co-debtor issue on August 1, 2006. The bankruptcy court denied the co-debtor's motion stating that "the difference between Zabu receiving notice on August 1, 2006 and November 2, 2006, does not change the fundamental basis of the earlier ruling." In re Morris, No. 04-38321, slip op. at 6 (Bankr. E.D. Va. May 1, 2007). The court reasoned that the primary factors supporting its decision remained: (1) absence of any notice to SunTrust before it made the deed of trust loan and (2) the Debtor waited over four months to file her motion to vacate the June 20 foreclosure. Id.

lacked notice of the co-debtor stay violation. Nor does Zabu's potential knowledge mitigate the Debtor's conduct in this matter. The Debtor failed to make her plan payments, did not oppose the lifting of the automatic stay in October 2005, and waited over four months before seeking to vacate the foreclosure. Further, the bankruptcy court stated that if UMLIC had requested to lift the co-debtor stay at the time, the court would have invariably done so, especially given the lack of opposition by the Debtor. Thus, as between an innocent third party who lacked knowledge of the co-debtor violation and the Debtor, who waited over four months before seeking recourse and failed to make her plan payments, which warranted the lifting of the automatic stay (and the co-debtor stay had UMLIC properly sought to do so), the bankruptcy court did not abuse its discretion in finding that the equities favored retroactive annulment of the co-debtor stay in order to protect an innocent third party, irrespective of UMLIC's violation of the co-debtor stay and potential questionable conduct of Zabu. See In re Myers, 491 F.3d at 130 (concluding that the bankruptcy court did not abuse its discretion by retroactively annulling the automatic stay under § 362 where the bankruptcy court was faced with rewarding the inequitable conduct of either the creditor or the debtor).

The Court, however, notes that it may be appropriate for the bankruptcy court to impose damages against any party that created, encouraged, or actively participated in violations of the co-debtor stay, even though those violations have been subsequently ratified by annulment of the co-debtor stay.[11]

---

[11]While § 362(k) imposes damages for any willful violation of the automatic stay, § 1301 does not contain a similar provision. Nonetheless, some courts have imposed damages for willful violations of the co-debtor stay in reliance on § 1301's legislative history or 11 U.S.C. § 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See, e.g., In re Patti, 2001 WL 1188218, at **8-10 (Bankr. E.D. Pa. 2001) (finding the creditor in violation of the co-debtor stay and awarding sanctions for civil contempt pursuant to 11 U.S.C. § 105(a)); In re Bertolami, 235 B.R.

## IV. CONCLUSION

For the reasons expressed above, the Court shall AFFIRM the bankruptcy court's final order retroactively annulling the co-debtor stay.

An appropriate Order shall issue.

/s/
**James R. Spencer**
**Chief United States District Judge**

Entered this 27th day of March 2008

493, 498 (Bankr. S.D. Fla. 1999) (granting the debtor's motion for sanctions for violation of the co-debtor stay); In re Sommersdorf, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991) (awarding damages to the debtors for the creditor's violation of the co-debtor stay because the legislative history of §1301 and § 362 make it clear that both provisions were enacted to protect the debtor); see also In re Myers, 491 F.3d at 130 (noting that it is appropriate for the bankruptcy court to impose damages under § 362 against any party that has violated the automatic stay, even if those violations are later ratified by annulment of the stay).